FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 NOV 21  AM 11: 13

LORETTA G. WHYTE
       CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STELLA MANION                                              CIVIL ACTION

VERSUS                                                     NO. 05-2123

JO ANNE B. BARNHART, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION                             SECTION "M"(3)

## ORDER AND REASONS

Plaintiff, Stella Manion ("Manion") seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. §405(g).

Having reviewed the administrative record, pleadings, the parties' cross motions for summary judgment, plaintiff's response brief as well as the applicable law, the Court finds that there is substantial evidence in the record supporting the decision of the Commissioner, and thus,

1

GRANTS summary judgment in favor of the Commissioner DISMISSING plaintiff's case WITH PREJUDICE for the following written reasons.

## I. PROCEEDINGS

On August 12, 2003, the plaintiff filed an application for Title II disability insurance benefits alleging inability to work as of December 31, 2002 due to numerous problems including fibromyalgia, peripheral neuropathy, shoulder and upper extremity pain, memory deficits, hypertension, and obesity. The Commissioner initially denied the plaintiff's application for benefits, as well as her request for reconsideration. Plaintiff timely appealed and requested a hearing before an Administrative Law Judge ("ALJ").

An evidentiary hearing was held in New Orleans, Louisiana on May 14, 2003 before ALJ Charles W. Kunderer. At the hearing, plaintiff was represented by counsel, Robert K. Moffett Jr.[1], attorney at law. Also present and testifying was Edward Ryan, a certified vocational expert. On May 28, 2004, ALJ Kunderer, issued a written decision, finding the plaintiff was not under a "disability" as defined by the Act, at any time through the date of decision.[2]

## II. JUDICIAL REVIEW

### A. "Substantial Evidence" Standard

The function of the court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal

---

[1] *See* Transcript of May 14, 2004 Hearing [Adm. Rec. 726].

[2] *See* ALJ Kunderer's May 28, 2004 decision (finding that Manion's restrictions do not prevent her from performing her past relevant work as a beautician. Villa v. Sullivan, 895 F.2d 1019 (5th Cir. 1990) [Adm. Rec. 37].

standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they must be affirmed. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); and *Spellman*, 1 F.3d at 360. It is more than a scintilla, but may be less than a preponderance. *Id.* Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

A district court may not try the issues *de novo*, reweigh the evidence, or substitute its own judgment for that of the Commissioner.[3] *Ripley*, 67 F.3d at 555; *Spellman*, 1 F.3d at 360. However, the district court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.

### B. Eligibility for Disability Benefits

---

[3] The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

To qualify for Social Security income or disability insurance benefits, the plaintiff must meet the requirements set forth in the Social Security Act. *See* 42 U.S.C. § 423(a). Specifically, the plaintiff must be under age 65, file an application for benefits, and be under a disability as defined by the Act. *See* 42 U.S.C. §§ 416(I), 423(a). Those claiming disability insurance benefits under the Act have the burden of showing the existence of disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Establishment of "disability" within the meaning of the Act is twofold. First, the claimant must demonstrate that she suffers from a medically determinable impairment. 42 U.S.C. §§ 416(I)(1), 423(d)(2)(A). Second, the claimant must prove that her impairment or combination of impairments render her unable to engage either in the work she previously performed or other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 416(I)(1), 423(d)(2).

The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Newton v. Apfel*, 209 F.3d at 453. The five-step inquiry terminates if the Commissioner finds at any step that a claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 58, 564 (5th Cir. 1995). The five-step analysis was restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must be presently working at

4

any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 593 (*quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)).

The Court weighs four elements of proof in determining whether there is substantial evidence of disability: (1) objective medical facts;(2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## C. Standards Applicable to Medical Evidence

The ALJ must follow the Guidelines set forth in 96-2p to determine whether "controlling weight" should be given medical opinions of a "treating source." These guidelines are that: (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence. Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected. "Treating

source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." (SSR 92-2p)

The factors provided in 20 C.F.R. 404.1527 and 416.927 include: (1) Examining relationship; (2) Treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) Supportability; (4) Consistency; and (5) Specialization.[4]  The Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when the evidence supports a contrary conclusion.

### III. FACTUAL BACKGROUND

Stella Manion was born October 26, 1952. She attended cosmetology school after graduating from high school and has approximately 2 years of college credits. She spent her entire working life as a beautician. Manion has not worked since December 31, 2002. After closing her beauty shop in Texas, Manion moved to Louisiana where her husband works for the Department of Defense.

Manion allegedly suffers from diabetes mellitus with peripheral neuropathy, shoulder and upper extremity pain, memory deficits, hypertension, fibromyalgia and obesity. She also reported a history of carpal tunnel surgery. She also experiences swelling and edema. Plaintiff testified that she experienced memory loss, which improved when one of her medications was changed. In October 2002, she still complained of memory loss or deficit in concentration . Manion has a long history of fibromyalgia and has taken medication to control the chronic pain especially over her knees. Plaintiff experienced Bell's Palsy in August 2001 and she stopped taking Vioxx which was used to control her pain from fibromyalgia. Manion 's height is 5'5 1/2" inches and

---

[4] *Moore* v. *Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990).

she weighs between 230 and 240 pounds. Although Manion attended counseling just after her first marriage ended in divorce, there is no evidence she suffers from severe depression.

The ALJ denied Manion benefits stating that plaintiff had the residual functional capacity to perform a limited range of light work. The ALJ explained his findings in this regard as follows:

> *Considering the evidence of record and claimant's testimony, I find that she retained the following functional capacity to perform work prior to December 31, 2002 her date last insured: Ms. Manion is closely approaching advanced age with a high school education. Ms. Manion can lift/carry up to twenty pounds occasionally and ten pounds frequently. Ms. Manion can push/pull ten pounds. Ms. Manion can sit for at least six hours out of an eight hour day and stand and/or walk (with normal breaks) for a total of at least six hours out of an eight hour day. Ms. Manion has to avoid working overhead but can perform some relevant overhead work. Ms. Manion at times has mild decreased capacity to maintain concentration because of mild to moderate pain.*

## IV. ANALYSIS

Manion raises four claims of error: (1) the ALJ erred by not proffering requests for additional information to her; (2) the ALJ erred in by not obtaining a consultative examination from a treating physician; (3) the ALJ erred by rejecting Dr. Aldredge's statement that indicated disability under Section 9.08(A) of the Listing of Impairments, and (4) the ALJ erred by rejecting certain psychological tests performed by psychologist Dr. Horvat.

The Commissioner responds as follows: (1) The ALJ properly requested clarification from plaintiff's physicians; (2) the ALJ did not err in obtaining a consultative examination by Dr.

Mandich; (3) the ALJ properly considered the medical opinions of record; and (4) the ALJ properly resolved the inconsistencies in Dr. Horvat's report.

### A. Information from Plaintiff's Physicians

On February 25, 2004 the ALJ sent letters to Dr. may, Dr. Aldredge, Dr. Alexander, and Dr. Powell requesting that they provide copies of medical records or diagnostic tests. On May 26, 2004,the ALJ sent a letter requesting supporting records to Dr. Cohn . Dr. Aldredge responded with a handwritten note as well as an examination record dated July 11, 2002 . No other physician furnished records to the ALJ. Manion complains that the ALJ incorrectly sought information from these physicians and that he did not notify her of his request for records. Contrary to Manion's claim that the ALJ did not follow 20 CFR §404.1512(d) (1), the applicable rule is found in CFR §404.(e) which states in pertinent part:

> *We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.*

This rule does not mandate the ALJ re-contact physicians to duplicate the medical record. As stated in Defendant's brief, Manion's allegation is not based upon "failure of the ALJ to develop the record." Manion stated in her brief as well as in her response brief that the ALJ possessed all records from all of her treating physicians. She cannot demonstrate prejudice or harmful error as a result of the ALJ's actions. *See Oderbert v. Barnhart* 413 F. Supp.2d 800, 805 (5th Cir. 2006).

### B. The consultative examination

Plaintiff moved from Texas to Louisiana after her Title II insured status expired. The record contains treatment records from numerous treating sources in both Texas and Louisiana.

It is apparent from the record that Manion did not have an ongoing treatment relationship with any single treating source. It was not error for the ALJ to choose Dr. Mandich as a consultative physician under the circumstances.[5]

### C. The medical opinions

Plaintiff argues that she meets the criteria for disability because that she had no useful function in two of her extremities as of December 31, 20002. The ALJ found this claim unsustainable. He found that the medical record shows that she was not impaired by paralysis or tremor, and she had normal coordination, normal motor strength, and normal sensory testing. Dr. Aldredge reported intact motor strength in the lower extremities with normal muscle bulk and tone and a normal gait. Plaintiff must show more than complaints of pain, as opposed to actual interference with the use of arms or legs. The ALJ did not err in his assessment regarding Manion's use of her extremities.

### D. Dr. Horvat's report on cognitive impairment

The ALJ found that plaintiff did not have a medically determinable cognitive impairment. Psychologist Horvat examined plaintiff in December 2001. He performed tests such as the AMEN Adult General Symptom Checklist, the Microcog test, and the Wisconsin Card Sorting Test. He diagnosed a cognitive disorder based upon these tests. The ALJ rejected Dr. Horvat's diagnosis for several reasons, including neurological examinations by Dr. Aldredge and Dr.

---

[5] The Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Greenspan*, 38 F.3d at 237(holding that the Act empowers the Commissioner to analyze the physicians' testimony and when substantial evidence supports the ALJ's decision to disregard a physician's conclusions, that basis alone is enough to survive judicial review); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore*, 919 F.2d at 905.

Bonikowski that did not show a cognitive impairment. As well, Dr. Aldredge, who examined Manion in May, 2002, opined that plaintiff's memory deficits were likely related to taking Baycol, a medication she discontinued. The ALJ's rejection of Dr. Horvat's diagnosis of cognitive impariment was a resolution of conflicting evidence which is properly within his discretion as the finder of fact.

The ALJ has sole responsibility for determining a claimant's disability status. *Moore*, 919 F.2d at 905. Where there is conflicting evidence regarding an issue reserved for the Commissioner, he has the responsibility to resolve that conflict. The final decision on whether a claimant is disabled for purposes of the Act is a legal one rather than a medical one, and that determination may be made only by the Commissioner. *See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

## V. CONCLUSION

Substantial evidence supports the Commissioner's determination that Manion has the residual functional capacity to perform the full range of light work, and thus, is not "disabled" within the meaning of the Act. Because none of the points of error should be sustained, **IT IS ORDERED** that **Summary Judgment be GRANTED in favor of the Commissioner** and that the plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 14th day of November, 2006.

Peter Beer
**UNITED STATES DISTRICT JUDGE**